IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATT JONES, | : | CIVIL ACTION NO. **3:CV-11-0666** |
| Plaintiff | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| MAJOR LORADY, et al., | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

**I. Background.**

On April 11, 2011, Plaintiff Matt Jones, an inmate at the State Correctional Institution at Frackville, Frackville, Pennsylvania ("SCI-Frackville"), filed the instant civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also filed a Motion for leave to proceed *in forma pauperis*. (Doc. 2).

Plaintiff's claims were set forth on a form civil rights complaint routinely provided to inmates. In his form 3-page original Complaint, Plaintiff named the following nine Defendants: Major Lorady; Captain Clark; Lt. James; Jeffrey A. Beard, Department of Corrections ("DOC") Secretary; Unit Manager Schueren; Superintendent Assistant Pete Damiter; Deputy Superintendent Kovalchik; Corrections Counselor Dudeck; and Superintendent Wenerowicz. (Doc. 1, p. 2).

In his original Complaint, Plaintiff indicated that he filed a grievance regarding his First Amendment Free Exercise of Religion claim and that he fully exhausted it.[1] (*Id*., p. 1).

---

[1]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion

Plaintiff's form original Complaint did not comport with Fed.R.Civ.P. 8. Plaintiff alleged that on April 28, 2010, he was transferred from SCI-Frackville to the Green Rock Correctional Center ("GRCC") in Virginia. Plaintiff averred that "prior to being transferred [he] was forced to shave his beard in violation of his religious, (Islamic), belief," and that at the time of his transfer, he had a valid DOC Hair Exemption "which was known by each and every Defendant." Plaintiff stated that despite his protest that shaving his beard violated his right to religious freedom, he was threatened by unnamed Defendants with physical harm if he did not shave, and he complied with unnamed Defendants' demand. Plaintiff alleged that "the Defendants, each of them, were aware that Virginia does not permit the wearing of beards in correctional facilities." (*Id.*, p. 2).

Plaintiff averred that on July 19, 2010, Virginia returned him to SCI-Frackville in Pennsylvania when it realized he was exempted from shaving due to his religious beliefs. However, Plaintiff alleged that from April 28, 2010 through July 19, 2010, he was forced to shave while confined in GCCR to avoid disciplinary action.

As relief, Plaintiff requested declaratory judgment as well as compensatory, nominal and punitive damages. (*Id.*, p. 3).

Since we found that Plaintiff's original Complaint did not sufficiently specify any conduct, wrongful or otherwise, of the numerous named Defendants and that it did not specifically mention

---

requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

any personal involvement of a single Defendant with any cognizable First Amendment claim, on April 19, 2011, we directed Plaintiff to file an amended complaint.  (Doc. 7).

On May 5, 2011, Plaintiff Jones filed his 9-page[2] typed Amended Complaint.  (Doc. 10). We now screen Plaintiff's Amended Complaint as we are obliged to do.[3]

**II. PLRA.**

As stated, Plaintiff Jones  has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. 2).  The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[5]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

---

[2]The body of Plaintiff's Amended Complaint is 8 pages, and we will refer to these pages herein as pages 1-8.

[3]This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[5]The Plaintiff filed an application to proceed *in forma pauperis* and an authorization to have funds deducted from his prison accounts. (Docs. 2 and 3).

**III. Section 1983 Standard.**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[6] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

---

[6]Plaintiff alleges in his amended pleading that all of the individual are employees of the PA DOC. (Doc. 10, pp. 1-2). This is sufficient to show that Defendants are state agents.

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra.*

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

**IV. Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.]

Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V. Allegations of Amended Complaint (Doc. 10).

As stated, Plaintiff Jones filed this §1983 civil rights action essentially alleging that his First and Fourteenth Amendments right to free exercise of religion was violated when he was made to shave his beard due to his transfer to a Virginia state prison even though he had a valid PA DOC Hair Exemption which should have precluded his transfer since "Virginia does not permit inmates to wear beards and inmates with exemptions would not be sent there." (Doc. 10, p. 3). Plaintiff states that his Amended Complaint is based on §1983, and he correctly states that this Court has jurisdiction over his action under 28 U.S.C. §1331 and §1343(a). (*Id.*, p. 1).

In his Amended Complaint, Plaintiff again names the following nine Defendants: Major of Guards Michael Lorady; Captain of Intelligence/Security T. Clark; Lt. of Intelligence/Security (unknown first name) James; Deputy Superintendent A. Kovalchik; Superintendent's Assistant/Grievance Coordinator Pete Damiter; Unit Manager R. Schueren; Counselor C. Dudeck; Superintendent Michael Wenerowicz; and Jeffrey Beard, PA Department of Corrections ("DOC")

Secretary. (Doc. 10, pp. 1-2). Plaintiff states that all nine Defendants were employed by the DOC, and all Defendants except for Beard were employed at SCI-Frackville at the relevant time. Plaintiff states that he is suing all nine Defendants in both their official and individual capacities. (*Id.*).

Plaintiff alleges that on April 28, 2010, while he was an inmate at SCI-Frackville, he was taken to Defendant Schueren's office and, in the presence of Defendants Schueren and Dudeck, Defendant Lorady informed him that he was bing transferred to Virginia and gave him a direct order to shave his beard. (*Id.*, p. 3). Plaintiff then avers as follows:

> 17.  Plaintiff informed Defendant Lorady he did not wish to go to Virginia and, as a Muslim, was prohibited from shaving his bear. Plaintiff further stated that Defendant Clark informed him that Virginia does not permit inmates to wear beards and inmates with exemptions would not be sent there.
>
> 18.  Defendant Lorady responded by stating that Plaintiff had no say in the matter and again ordered him to shave.
>
> 19.  Plaintiff once more attempted to explain to Defendant Lorady that his religion prohibited shaving his beard. Plaintiff further informed Defendant Lorady that he had a valid 'hair exemption' issued by the DOC. Plaintiff asked Defendants Schueren and Dudeck to confirm that fact to which Defendant Schueren replied he did not care.
>
> 20.  Defendant Schueren stated to Plaintiff that if he refused to shave voluntarily he would be forcibly shaved. As confirmation Defendant Lorady stated "we are not dressed like this for nothing" pointing to the officers donning the riot gear.
>
> 21.  Defendant Lorady, apparently frustrated by Plaintiff's protest, stated that either he shave his beard willingly or he would have him "strapped down" and shaved. Plaintiff, fearful of being beaten and adversely affecting his parole eligibility, shaved his beard. Defendant James humiliated Plaintiff by making jokes about how funny he looked beardless.

(*Id.*, pp. 3-4, ¶'s 17-21).

Plaintiff alleges that soon after he was taken to Defendant Schueren's office, he shaved his beard and he was transferred to a prison in Virginia. Plaintiff avers that "while [in a Virginia prison, he] was forced to shave every day as Virginia adheres to a strict policy prohibiting beards." (*Id*., p. 4). Plaintiff avers that after his transfer, he asked for a PA DOC grievance form but was told that PA DOC did not provide these forms.

Plaintiff alleges that in July 2010, he was informed that Virginia prison staff recently became aware of his approved PA DOC hair exemption and he was told that he would be transferred back to Pennsylvania. Plaintiff states that on July 19, 2010, he was transferred back to SCI-Frackville. (*Id*.).

Plaintiff states that on July 26, 2010, he filed a grievance (#327879) alleging violations of his free exercise of religion rights due to his transfer to a Virginia prison and required shaving, and that it was initially rejected by Defendant Damiter as untimely. Plaintiff states that on September 27, 2010, the DOC Chief Grievance Officer remanded his grievance to SCI-Frackville to be addressed on its merits. (*Id*., p. 5). Plaintiff avers that on October 6, 2010, Defendant Damiter responded to his grievance and denied it. Plaintiff states that he appealed Damiter's response on October 12, 2010, to the DOC Chief Grievance Officer. Plaintiff avers that after he did not receive a decision, he wrote to the DOC Chief Grievance Officer, and he was advised on November 15, 2010, that the DOC Chief Grievance Officer had not received either Damiter's remanded response or Plaintiff's appeal. Plaintiff states that he again wrote to the DOC Chief Grievance Officer and that he was again advised in December 2010 by the DOC Chief Grievance Officer (Varner) that his appeal was not received, and that any attempts to appeal would be untimely. Plaintiff states that

8

in mid-April 2011, he received a "Grievance Deadline Notice" stating that his appeal was received and that an extension was necessary to investigate and respond to his appeal. Plaintiff then states that "after nine months of futile attempts to obtain administrative relief [he] commenced the instant action." (*Id*., pp. 5-6).

Thus, Plaintiff appears to admit on the face of his Amended Complaint that he did not exhaust his DOC administrative remedies with respect to his instant free exercise of religion claims, and he contends that it would be futile to do so. Plaintiff indicates that he has not yet received a response to his grievance appeal from the DOC Chief Grievance Officer and that he was advised less than a month ago that an extension of time was required to investigate and respond to his appeal.

As relief, Plaintiff requests declaratory relief as well as compensatory, nominal and punitive damages. (*Id*., p. 8). As stated, Plaintiff sues Defendants in both their individual and official capacities.[7]

---

[7]Plaintiff cannot seek compensatory damages from each named Defendant in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, both compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

   Thus, insofar as Plaintiff has sued all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities. Therefore, all of Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

**VI. Discussion.**

As stated, Plaintiff acknowledges on the face of his Amended Complaint, Doc. 10, pp. 5-6, that he has not exhausted his DOC administrative remedies before he filed this action. He states that he waited for a response from the DOC Chief Grievance Officer regarding his appeal of his grievance and that "after nine months of futile attempts to obtain administrative relief" he filed his instant action. However, Plaintiff admits that in "mid April 2011," less than one month ago, he received, seemingly from the DOC Chief Grievance Officer, a "Grievance Deadline Notice" stating that his appeal was received and that an extension was necessary to investigate and respond to his appeal. Plaintiff did not wait for a response to his final grievance appeal to the DOC Chief Grievance Officer; rather, he filed this action on April 11, 2011, shortly after he received the "Grievance Deadline Notice."

We will recommend that Plaintiff's action be dismissed without prejudice to file a new action after he exhausts his DOC administrative remedies.

As mentioned, it is quite apparent from the face of Plaintiff's Amended Complaint that he has not yet fully exhausted his DOC administrative remedies before he filed this action, as required. (Doc. 10, pp. 5-6). We find that in screening Plaintiff's Amended Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his allegations make clear that he did not exhaust his administrative remedies regarding his claims before he filed his action. *See Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit recently stated:

McPherson argues that the District Court's dismissal of his complaint as time-barred was wrong on both procedural and substantive grounds. As a procedural matter, McPherson contends that *sua sponte* dismissal on statute of limitations grounds is inconsistent with our holding in *Ray v. Kertes,* 285 F.3d 287 (3d Cir.2002). On substantive grounds, McPherson contends, without substantiation, that equitable tolling may allow him to pursue this action long after the limitations period otherwise expired.

*Ray* concerned a provision of the Prison Litigation Reform Act ("PLRA") that states that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While recognizing that the statute clearly requires plaintiffs to exhaust their administrative remedies, we rejected a pleading rule that would have required a complaint to allege facts demonstrating exhaustion. Rather, we held that "failure to exhaust is an affirmative defense to be pleaded by the defendant." *Ray,* 285 F.3d at 295.

We also found that the court below erred in *sua sponte* dismissing a complaint that did not demonstrate that the plaintiff exhausted administrative remedies. *Id.* We relied primarily on the text of § 1997e, which provides for *sua sponte* dismissal if a complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *Ray,* 285 F.3d at 296 (citing 42 U.S.C. § 1997e(c)(1)). We also noted that the statute explicitly allows a court to dismiss a complaint without first requiring the exhaustion of administrative remedies." *Id.* (citing 42 U.S.C. § 1997e(c)(2)). We concluded, under the principle of *expressio unius est exclusio alterius,* that the omission of "failure to exhaust" from the grounds for sua *sponte* dismissal indicated Congressional intent not to include failure to exhaust as a reason justifying dismissal. *Id.*

McPherson argues that *Ray* stands for the general proposition that a court may not *sua sponte* dismiss a complaint on the basis of *any* affirmative defense, including the statute of limitations. To be sure, a limitations defense is an affirmative defense. *See Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002). *Ray,* however, does not go as far as McPherson claims. This Court has long recognized that the statute of limitations can serve as the basis for dismissal under Fed.R.Civ.P. 12(b)(6), as long as "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978) (internal quotation marks omitted). **This principle is consistent with our observation in *Ray* that, "[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint." *Ray,* 285 F.3d at 297. Ray's failure to exhaust was not apparent from the face of his complaint, so *sua sponte* dismissal was not appropriate.**

11

> The fact that a claim has not been brought within the statue of limitations, however, may be apparent from the face of a complaint. The United States Supreme Court, while agreeing that failure to exhaust under the PLRA is an affirmative defense and that plaintiffs need not demonstrate exhaustion in their complaints to survive dismissal, nonetheless recognized that a court may dismiss a complaint for failing to state a claim when its allegations show that the complaint is not timely. The Court noted that "[i]f the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to make a claim; that does not make the statute of limitations any less an affirmative defense." *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The factual allegations in the complaint, not the label of "affirmative defense," control the court's decision whether to dismiss the suit. "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Id.*
>
> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

(Emphasis added).

Thus, based on *McPherson and Robinson*, even though exhaustion is an affirmative defense pursuant to *Ray, sua sponte* dismissal of Plaintiff Jones's action by this Court is nonetheless proper since his failure to fully exhaust his DOC administrative remedies available to him[8] is abundantly

---

[8]Pennsylvania's DOC Grievance System is a three-part process. *See Booth v. Churner*, 206 F.3d 289, 293 (3d Cir. 2000), *aff'd on other grounds*, 532 U.S. 731 (2001) (holding that excessive force is a prison condition subject to the PLRA's exhaustion requirement). First, an inmate must file an initial grievance specifying the incident in question, persons who may have helpful information, and the relief sought. If the initial grievance is denied an inmate must then appeal to the Superintendent. Subsequently, if an inmate's appeal to the Superintendent is

clear from the face of his Amended Complaint. In *Ray*, unlike the present case, the inmate's failure to exhaust was not apparent from the face of his Complaint. *Id.*, at *3.

Initially, the issue of whether Plaintiff fully exhausted all of his DOC administrative remedies which were available to him is a question of law for the Court to decide. *See Drippe v. Tobelinski*, 604 F. 3d 778, 782 (3d Cir. 2010)("exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge")(citation omitted).

In *Womack v. Smith*, 310 Fed. Appx. 547, 550 (3d Cir. 2009), the Court stated:

> The Prison Litigation Reform Act (PLRA), requires full and procedurally proper exhaustion of all available administrative remedies as a prerequisite to prisoner suits challenging prison conditions under federal law. 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004). "[P]rison grievance procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231.

Section 1997(a) of the Prison Litigation Reform Act ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court

---

denied he must appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). *Id*. Thus, pursuant to *Banks*, an inmate must complete all three parts to establish that he has exhausted his administrative remedies. *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). Failure to complete any component of the administrative process will preclude an inmate's claim in federal court. *Id*.

held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

The Third Circuit has stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies **prior to filing suit in federal court**." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted)(emphasis added). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id. See also Nyhuis v. Reno,* 204 F. 3d 65 (3d Cir. 2000).

As the Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a); *see Woodford v Ngo*, 126 S.Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 2388.
> 
> The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id*. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. Failure to substantially comply with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*,

> 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

Plaintiff's Amended Complaint is clear that Plaintiff has not yet completed exhaustion of his stated free exercise of religion claims against Defendants. In fact, as stated, Plaintiff just recently (less than one month ago), *i.e.* in "mid April 2011," received from the DOC Chief Grievance Officer a "Grievance Deadline Notice" stating that his appeal was received and that an extension was necessary to investigate and respond to his appeal. Plaintiff Jones indicates that he believes that it was futile to wait any longer for a response to his final appeal of his grievance pending with the DOC Chief Grievance Officer. However, as stated, there is no futility exception to the PLRA's exhaustion requirement.

In *Cooper v. Sniezek*, 2010 WL 3528848, *7 (M.D. Pa. 9-7-10), the Court stated:

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure

15

to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

The law is clear that Plaintiff Jones was required to exhaust his administrative remedies before he filed his instant action. *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, *3 (M.D. Pa.). The law is also clear that Plaintiff cannot complete exhaustion while his present action is pending with this Court. Rather, Plaintiff's instant case must be dismissed and he can file a new action once he completes exhaustion. The Third Circuit stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (not precedential). The *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003)).

Accordingly, we will recommend that Plaintiff Jones's Amended Complaint (Doc. 10) be dismissed without prejudice to file a new action after he completes exhaustion of his DOC administrative remedies.

**VII. Recommendation.**

Based on the above, it is respectfully recommended that Plaintiff Jones's Amended Complaint **(Doc. 10)** be dismissed without prejudice to file a new action after he completes exhaustion of his DOC administrative remedies, and that this case be closed.


				s/ Thomas M. Blewitt
				**THOMAS M. BLEWITT**
				**United States Magistrate Judge**

**Dated: May 12, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATT JONES, | : | CIVIL ACTION NO. **3:CV-11-0666** |
| Plaintiff | : | (Judge Kosik) |
| v. | : | (Magistrate Judge Blewitt) |
| MAJOR LORADY, et al., | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 12, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                           **s/ Thomas M. Blewitt**
                                                         **THOMAS M. BLEWITT**
                                                         **United States Magistrate Judge**

**Dated: May 12, 2011**