UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATT JONES,<br><br>      Plaintiff<br><br>v.<br><br>MAJOR LORADY, et al.,<br><br>      Defendants. | Civil No. 3:11-CV-666<br><br>(Judge Kosik) |

### MEMORANDUM

Plaintiff, Matt Jones, an inmate at the State Correctional Institution at Frackville, Pennsylvania, filed a civil rights action pursuant to 42 U.S.C. § 1983 on April 11, 2011. (Doc. 1). The case was assigned to Magistrate Judge Thomas M. Blewitt. The Magistrate Judge issued a Report and Recommendation on May 12, 2011 recommending that Plaintiff's Complaint be dismissed without prejudice to file a new action after he completes exhaustion of his DOC administrative remedies, and that the case be closed. (Doc. 11 at 17). Plaintiff filed Objections to the Report and Recommendation on May 23, 2011. (Doc. 13). After reviewing the Report and Recommendation, considering Plaintiff's Objections, and for the reasons that follow, we will adopt the recommendation of the Magistrate Judge, and Plaintiff's Complaint will be dismissed without prejudice.

**Background**

Plaintiff, Matt Jones, is a state inmate currently housed at the State Correctional Institution at Frackville, Pennsylvania. According to Plaintiff's Amended Complaint, on or about April 28, 2010, Plaintiff was approached by two correctional officers, both dressed in black riot gear. Plaintiff alleges that Defendant Lorady approached him to inform him he was being transferred from SCI Frackville to a prison in the Commonwealth of Virginia. He further

FILED
SCRANTON

JUN 1 7 2011

Per_____
DEPUTY CLERK

alleges that he was given a "direct order" that he shave his beard prior to being transferred.[1] Plaintiff claims he informed Defendant Lorady that he did not wish to go to Virginia, and, as a Muslim, was prohibited from shaving his beard.[2] (Doc. 11 at 3). Plaintiff alleges that Defendant Lorady responded by stating that Plaintiff had no say in the matter and again ordered him to shave his beard. According to his Amended Complaint, Plaintiff once again attempted to explain to Defendant Lorady that his religion prohibited shaving his beard and that he had a valid "hair exemption" issued by the DOC. (Doc. 11 at 3). Thereafter, Defendant Scheuren allegedly stated that if Plaintiff refused to shave voluntarily, he would be forcibly shaved. Plaintiff also alleges that Defendant Lorady stated that Plaintiff needed to either shave willingly or he would be "strapped down" and shaved. (Doc. 11 at 4). "Fearful of being beaten and adversely affecting his parole eligibility," Plaintiff shaved off his beard. (Doc. 11 at 4).

Plaintiff was ultimately transferred to the Green Rock Correctional Center in Chatham, Virginia. After several months, during which time Plaintiff was required to shave his face daily, Plaintiff was called to the Superintendent's Office and informed that "Virginia has recently become aware of his approved hair exemption, issued for religious reasons," and that "Plaintiff ... would be transferred back to Pennsylvania and that Virginia 'wanted no parts of it.'" (Doc. 10 at 4). Plaintiff was subsequently transferred back on or about July 19, 2010.

**Grievance Process**

As summarized by the Magistrate Judge in his Report and Recommendation:

> Plaintiff states that on July 26, 2010, he filed a grievance (#327879) alleging violations of his free exercise of religion rights due to his transfer to a Virginia prison and required shaving, and that it was initially rejected by Defendant Damiter as untimely. Plaintiff states that on September 27, 2010, the DOC Chief Grievance Officer remanded his grievance to SCI-Frackville to be addressed on its merits. Plaintiff avers that on October 6, 2010, Defendant Damiter

---

[1] According to Plaintiff's Amended Complaint, it is the policy of the Virginia prison system that inmates, regardless of religious belief, are prohibited from growing beards. (Doc. 10).

[2] Because of his religious beliefs, Plaintiff was granted a beard-exemption by the Pennsylvania Department of Corrections.

2

responded to his grievance and denied it. Plaintiff states that he appealed Damiter's response on October 12, 2010, to the DOC Chief Grievance Officer. Plaintiff avers that after he did not receive a decision, he wrote to the DOC Chief Grievance Officer, and he was advised on November 15, 2010, that the DOC Chief Grievance Officer had not received either Damiter's remanded response or Plaintiff's appeal. Plaintiff states that he again wrote to the DOC Chief Grievance Officer and that he was again advised in December 2010 by the DOC Chief Grievance Officer (Varner) that his appeal was not received, and that any attempts to appeal would be untimely. Plaintiff states that in mid-April 2011, he received a "Grievance Deadline Notice" stating that his appeal was received and that an extension was necessary to investigate and respond to his appeal. Plaintiff then states that "after nine months of futile attempts to obtain administrative relief [he] commenced the instant action."

(Doc. 11 at 8-9).

**Procedural History**

Plaintiff commenced this action by filing a Complaint on April 11, 2011. (Doc. 1). The case was referred to Magistrate Judge Thomas M. Blewitt for screening. The Magistrate Judge issued an Order on April 19, 2011 directing Plaintiff to file an Amended Complaint that properly alleged a claim under 42 U.S.C. § 1983, and that was to be complete in all respects of the Federal Rules of Civil Procedure and the Local Rules of the Middle District of Pennsylvania. (Doc. 7). Plaintiff filed an Amended Complaint on May 5, 2011. (Doc. 10). The Magistrate Judge issued a Report and Recommendation on May 12, 2011 recommending that Plaintiff's Amended Complaint be dismissed without prejudice to file a new action after he completed exhaustion of his DOC administrative remedies, and that the case be closed. (Doc. 11). Plaintiff filed Objections to the Report and Recommendation on May 23, 2011. (Doc. 13).

**Objections Filed to a Report and Recommendation**

When objections are filed to a report and recommendation of a magistrate judge, we review de novo the portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); see Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). Written objections to a report and recommendation must "specifically identify the portions of the

proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. Pa. Local R. 72.3. We may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); M.D. Pa. Local R. 72.3. Although our review is de novo, we are permitted to rely upon the magistrate judge's proposed recommendations to the extent that we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

**Prison Litigation Reform Act**

The Prison Litigation Reform Act of 1995 "mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." See 42 U.S.C. § 1997(e)(a); Jones v. Bock, 549 U.S. 199, 199 (2007). Prior to initiating a § 1983 suit, a prisoner-plaintiff is required to exhaust the administrative remedies available to him. 42 U.S.C. § 1997(e) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has made clear that prisoners must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitation on the kind of relief that may be gained through a grievance process.[3] See Porter v. Nussle, 534, U.S. 516, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); see also Booth v. Churner, 532 U.S. 731, 742 n.6 (2001). The Third Circuit has held that "it is beyond the power of this court... to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000);

---

[3] The Pennsylvania Department of Corrections provides inmates with a grievance regime for the formal adjudication of prisoner complaints. See Pa. Dep't Corrs., Inmate Handbook, DC-ADM 804 pp. 9-10 (2009).

4

see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004).

The "failure to exhaust" requirement imposed by the PLRA[4] is an affirmative defense that must be pleaded by defendants in a civil rights action. Jones, 549 U.S. at 216. The plaintiff-prisoner need not allege that he has exhausted his administrative remedies. Id. Rather, the burden falls on the defendant(s) to raise the defense of exhaustion. If the court finds that administrative remedies have not been exhausted, then the court must dismiss the action. Even though exhaustion is an affirmative defense, sua sponte dismissal of an action is proper where failure to exhaust available administrative remedies available to a prisoner-plaintiff is abundantly clear. See McPherson v. U.S., 2010 WL 3446879, *3-4 (3d Cir. 2010).

The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. We agree with the Magistrate Judge that "Plaintiff's Amended Complaint is clear that Plaintiff has not yet completed exhaustion of his stated free exercise of religion claims against Defendants." (Doc. 11 at 15). Plaintiff specifically states in his Amended Complaint that he received a Grievance Deadline Notice in April 2011– the same time he filed his initial Complaint. Plaintiff indicated that he felt it was "futile" to wait for a response from the Department of Corrections. However, as stated above, there is no futility exception to the PLRA's exhaustion requirement.

In his Objections to the Report and Recommendation, Plaintiff raises two grounds for objecting to the Magistrate Judge: "1) the failure to exhaust administrative remedies does not provide a basis for sua sponte dismissal; and 2) the exhaustion requirement is satisfied as the Defendants has [sic] made any administrative remedy unattainable." (Doc. 13 at 1).

As for Plaintiff's first issue, we addressed this objection above. Plaintiff's failure to exhaust his available administrative remedies does not normally allow the court to sua sponte

---

[4]The PLRA requires not just exhaustion of administrative remedies, but *proper* exhaustion. Proper exhaustion requires compliance with the prison's procedural rules, including deadlines, for filing grievances and appeals. Woodford v. Ngo, 548 U.S. 81, 88 (2006). Failure to do so may result in the dismissal of a plaintiff's complaint.

dimiss his Complaint. See Ray, 285 F.3d at 297. However, per the rule established in McPherson v. U.S., sua sponte dismissal of an action is proper where the affirmative defense to be raised– in this case failure to exhaust available administrative remedies available to a prisoner/plaintiff– is abundantly clear. See also Ray, 285 F.3d at 297 ("[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint.").

The Third Circuit has held that prisoner-plaintiffs may not file a federal civil rights action before exhausting their administrative remedies. And more specifically, the PLRA rule requiring exhaustion would be circumvented by allowing prisoners to file a federal claim while simultaneously continuing through the administrative grievance process. Nyhuis, 204 F.3d at 67 n.12 (finding that the PLRA requires that "inmates first test and exhaust the administrative [grievance] process, and then, if dissatisfied, take the time necessary to file a timely federal action."); see also Ahmed v. Dragovich, 297 F.3d 201 (3d Cir. 2002).

We understand Plaintiff's position that the failure to exhaust is an affirmative defense that should be raised by a Defendant in a civil rights action. However, we are persuaded by the reasoning of the Court in McPherson, that failure to exhaust is an affirmative defense, but, like the statute of limitations, when screening a complaint, we may sua sponte dismiss a suit where the affirmative defense to be raised– here exhaustion– "is apparent from the face of the complaint...." McPherson, 392 Fed.App'x at *4.

As for Plaintiff's second issue with the Report and Recommendation, we are not persuaded with his argument that exhaustion is satisfied because the Defendants made any administrative remedy unattainable. Plaintiff all but admits that he got anxious and refused to wait any longer for the response to come from the DOC regarding his appeal. He filed his initial Complaint on April 11, 2011. In mid-April, Plaintiff received a Grievance Deadline Notice from the DOC Chief Grievance Officer informing him that his appeal was received and that an extension of time was necessary to investigate and respond to his appeal. (Doc. 10 at

5). As pointed out by the Magistrate Judge, "it is quite apparent from the face of Plaintiff's Amended Complaint that he has not yet fully exhausted his DOC administrative remedies before he filed this action, as required [by the PLRA]." (Doc. 11 at 10). We agree.

The Court in Woodford, 126 S.Ct. at 2378, held that the exhaustion requirement of the PLRA is required for all actions concerning prison conditions brought under federal law. Moreover, the "PLRA attempts to eliminate unwarranted federal court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id.

In his Objections, Plaintiff appears to indicate that a "catch-22" exists– that "his grievance was simply tied up with the hopes he would give up... [i]t is unclear how long the Magistrate would have Plaintiff wait for the defendants to respond to his grievance but if 9 months is not sufficient, no period of time is." (Doc. 13 at 6). We understand Plaintiff's frustration, however, it is not within the province of this court to determine what may or may not be an adequate amount of time to investigate a grievance within the prison system.

Accordingly, Plaintiff's Amended Complaint will be dismissed without prejudice so that Plaintiff may properly exhaust his administrative remedies available, before proceeding with this action, if necessary.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MATT JONES,

                Plaintiff

v.

MAJOR LORADY, et al.,

                Defendants.

Civil No. 3:11-CV-666

(Judge Kosik)

**ORDER**

AND NOW, this __17__ day of June, 2011, IT IS HEREBY ORDERED THAT:

(1) The May 12, 2011 Report and Recommendation of Magistrate Judge Thomas M. Blewitt is ADOPTED;

(2) Plaintiff's Objections to the Report and Recommendation (Doc. 13) are OVERRULED;

(3) Plaintiff's Amended Complaint (Doc. 10) is DISMISSED WITHOUT PREJUDICE; and

(4) The Clerk of Court is directed to ADMINISTRATIVELY CLOSE this case, to be reopened by Plaintiff at a time when he properly exhausts his administrative remedies in connection with this action by NOTIFYING the Clerk of Court and docketing all documents to this same term and number.

So Ordered.

                                                        Edwin M. Kosik
                                                        United States District Judge