IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MATT JONES,                              :     CIVIL ACTION NO. **3:CV-11-0666**
                                         :
                   Plaintiff             :     (Judge Kosik)
                                         :
                   v.                    :     (Magistrate Judge Blewitt)
                                         :
MAJOR LORADY, et al.,                    :
                                         :
                   Defendants            :

## REPORT AND RECOMMENDATION

### I. Background.

On April 11, 2011, Plaintiff Matt Jones, an inmate at the State Correctional Institution at

Frackville, Frackville, Pennsylvania ("SCI-Frackville"), filed the instant civil rights action, pursuant

to 42 U.S.C. § 1983.  (Doc. 1).  Plaintiff also filed a Motion for leave to proceed *in forma pauperis*.

(Doc. 2).

Plaintiff's claims were set forth on a form civil rights complaint routinely provided to inmates.

In his form 3-page original Complaint, Plaintiff named the following nine Defendants: Major

Lorady; Captain Clark; Lt. James; Jeffrey A. Beard, Department of Corrections ("DOC") Secretary;

Unit Manager Schueren; Superintendent Assistant Pete Damiter; Deputy Superintendent Kovalchik;

Corrections Counselor Dudeck; and Superintendent Wenerowicz.  (Doc. 1, p. 2).

In his original Complaint, Plaintiff indicated that he filed a grievance regarding his First

Amendment Free Exercise of Religion claim and that he fully exhausted it.[1]  (*Id.*, p. 1).

---

[1]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil

Plaintiff's form original Complaint did not comport with Fed.R.Civ.P. 8.  Plaintiff alleged that on April 28, 2010, he was transferred from SCI-Frackville to the Green Rock Correctional Center ("GRCC") in Virginia.  Plaintiff averred that "prior to being transferred [he] was forced to shave his beard in violation of his religious, (Islamic), belief," and that at the time of his transfer, he had a valid DOC Hair Exemption "which was known by each and every Defendant."  Plaintiff stated that despite his protest that shaving his beard violated his right to religious freedom, he was threatened by unnamed Defendants with physical harm if he did not shave, and he complied with unnamed Defendants' demand.  Plaintiff alleged that "the Defendants, each of them, were aware that Virginia does not permit the wearing of beards in correctional facilities."  (*Id.*, p. 2).

Plaintiff averred that on July 19, 2010, Virginia returned him to SCI-Frackville in Pennsylvania when it realized he was exempted from shaving due to his religious beliefs.  However, Plaintiff alleged that from April 28, 2010 through July 19, 2010, he was forced to shave while confined in GRCC to avoid disciplinary action.

As relief, Plaintiff requested declaratory judgment as well as compensatory, nominal and punitive damages.  (*Id.*, p. 3).

Since we found that Plaintiff's original Complaint did not sufficiently specify any conduct, wrongful or otherwise, of the numerous named Defendants and that it did not specifically mention any personal involvement of a single Defendant with any cognizable First Amendment claim, on

---

rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*  However, Defendants have the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

April 19, 2011, we directed Plaintiff to file an amended complaint. (Doc. 7).

On May 5, 2011, Plaintiff Jones filed his 9-page[2] typed Amended Complaint. (Doc. 10). We then screened Plaintiff's Amended Complaint as we are obliged to do under the PLRA.[3]

On May 12, 2011, we issued a Report and Recommendation and recommended that Plaintiff Jones's Amended Complaint (Doc. 10) be dismissed without prejudice to file a new action after he completed exhaustion of his DOC administrative remedies. (Doc. 11). *See* 2011 WL 2462022 (M.D. Pa. 5-12-11).

On June 17, 2011, the Court adopted our R&R and dismissed Plaintiff's Amended Complaint without prejudice. (Doc. 14). The Court directed the Clerk of Court to administratively close the case and directed that Plaintiff could reopen it when his administrative remedies were fully exhausted. (Doc. 23). *See* 2011 WL 2461982 (M.D. Pa. 6-17-11).

On July 28, 2011 and August 30, 2011, Plaintiff filed documents claiming that he fully exhausted his administrative remedies, including a final appeal decision dated July 28, 2011. (Docs. 17 & 20). On October 7, 2011, the Court issued an Order stating that it appeared Plaintiff exhausted his administrative remedies, and directing the Clerk of Court to reopen this case and to remand it to the undersigned. (Doc. 23).

Thus, we again screen Plaintiff's Amended Complaint.

---

[2] The body of Plaintiff's Amended Complaint is 8 pages, and we will refer to these pages herein as pages 1-8, Doc. 10.

[3] This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

## II.  PLRA.

As stated, Plaintiff Jones has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (Doc. 2).  The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[5]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

## III.  Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.).  Further, Section 1983 is not a source of substantive rights.  Rather, it

---

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[5]The Plaintiff filed an application to proceed *in forma pauperis* and an authorization to have funds deducted from his prison accounts. (Docs. 2 and 3).

is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[6]  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra*.

---

[6]Plaintiff alleges in his amended pleading that all of the  individual are employees of the PA DOC.  (Doc. 10, pp. 1-2).  This is sufficient to show that Defendants are state agents.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

## IV. Motion to Dismiss Standard.

In *Reisinger v. Luzerne County*, 712 F.Supp.2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949.

This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (*quoting Twombly,* 550 U.S. at 555) (not precedential).

## V. Allegations of Amended Complaint (Doc. 10).

As stated, Plaintiff Jones filed this §1983 civil rights action essentially alleging that his First and Fourteenth Amendments rights to free exercise of religion were violated when he  was made to shave his beard due to his transfer to a Virginia state prison even though he had a valid PA DOC Hair Exemption which should have precluded his transfer since "Virginia does not permit inmates to wear beards and inmates with exemptions would not be sent there."  (Doc. 10, p. 3).  Plaintiff states that his Amended Complaint is based on §1983, and he correctly states that this Court has jurisdiction over his action under 28 U.S.C. §1331 and §1343(a).  (*Id.*, p. 1).

In his Amended Complaint, Plaintiff names the following nine (9) Defendants:  Major of Guards Michael Lorady; Captain of Intelligence/Security T. Clark; Lt. of Intelligence/Security (unknown first name) James; Deputy Superintendent A. Kovalchik; Superintendent's Assistant/Grievance Coordinator Pete Damiter; Unit Manager R. Schueren; Counselor C. Dudeck; Superintendent Michael Wenerowicz; and Jeffrey Beard, PA Department of Corrections ("DOC") Secretary.  (Doc. 10, pp. 1-2).  Plaintiff states that all nine Defendants were employed by the DOC, and all Defendants except for Beard were employed at SCI-Frackville during the relevant times. Plaintiff states that he is suing all nine Defendants in both their official and individual capacities.

(*Id.*).

Plaintiff alleges that on April 28, 2010, while he was an inmate at SCI-Frackville, he was taken to Defendant Schueren's office and, in the presence of Defendants Schueren and Dudeck, Defendant Lorady informed him that he was bing transferred to Virginia and gave him a direct order to shave his beard.  (*Id.*, p. 3).  Plaintiff then avers as follows:

> 17.    Plaintiff informed Defendant Lorady he did not wish to go to Virginia and, as a Muslim, was prohibited from shaving his beard.  Plaintiff further stated that Defendant Clark informed him that Virginia does not permit inmates to wear beards and inmates with exemptions would not be sent there.
>
> 18.    Defendant Lorady responded by stating that Plaintiff had no say in the matter and again ordered him to shave.
>
> 19.    Plaintiff once more attempted to explain to Defendant Lorady that his religion prohibited shaving his beard.  Plaintiff further informed Defendant Lorady that he had a valid 'hair exemption' issued by the DOC. Plaintiff asked Defendants Schueren and Dudeck to confirm that fact to which Defendant Schueren replied he did not care.
>
> 20.    Defendant Schueren stated to Plaintiff that if he refused to shave voluntarily he would be forcibly shaved.  As confirmation Defendant Lorady stated "we are not dressed like this for nothing" pointing to the officers donning the riot gear.
>
> 21.    Defendant Lorady, apparently frustrated by Plaintiff's protest, stated that either he shave his beard willingly or he would have him "strapped down" and shaved.  Plaintiff, fearful of being beaten and adversely affecting his parole eligibility, shaved his beard.  Defendant James humiliated Plaintiff by making jokes about how funny he looked beardless.

(*Id.*, pp. 3-4, ¶'s 17-21).

Plaintiff alleges that soon after he was taken to Defendant Schueren's office, he shaved his beard and he was transferred to a prison in Virginia.  Plaintiff avers that "while [in a Virginia prison,

he] was forced to shave every day as Virginia adheres to a strict policy prohibiting beards." (*Id.*, p. 4). Plaintiff avers that after his transfer, he asked for a PA DOC grievance form but was told that PA DOC did not provide these forms.

Plaintiff alleges that in July 2010, he was informed that Virginia prison staff recently became aware of his approved PA DOC hair exemption and he was told that he would be transferred back to Pennsylvania. Plaintiff states that on July 19, 2010, he was transferred back to SCI-Frackville. (*Id.*). Plaintiff has remained confined in SCI-Frackville since July 19, 2010.

Plaintiff states that on July 26, 2010, he filed a grievance (#327879) alleging violations of his free exercise of religion rights due to his transfer to a Virginia prison and required shaving, and that it was initially rejected by Defendant Damiter as untimely. Plaintiff states that on September 27, 2010, the DOC Chief Grievance Officer remanded his grievance to SCI-Frackville to be addressed on its merits. (*Id.*, p. 5). Plaintiff avers that on October 6, 2010, Defendant Damiter responded to his grievance and denied it. Plaintiff states that he appealed Damiter's response on October 12, 2010, to the DOC Chief Grievance Officer. Plaintiff avers that after he did not receive a decision, he wrote to the DOC Chief Grievance Officer, and he was advised on November 15, 2010, that the DOC Chief Grievance Officer had not received either Damiter's remanded response or Plaintiff's appeal. Plaintiff states that he again wrote to the DOC Chief Grievance Officer and that he was again advised in December 2010 by the DOC Chief Grievance Officer (Varner) that his appeal was not received, and that any attempts to appeal would be untimely. Plaintiff states that in mid-April 2011, he received a "Grievance Deadline Notice" stating that his appeal was received and that an extension was necessary to investigate and respond to his appeal. Plaintiff then states

that "after nine months of futile attempts to obtain administrative relief [he] commenced the instant action." (*Id.*, pp. 5-6).

Thus, as the Court stated in its recent October 7, 2011 Order, Plaintiff admitted that when he initiated this case, he had an appeal pending with the DOC Chief Grievance Officer. (Doc. 23, p. 2). However, as stated above, the Court indicated that Plaintiff submitted the July 28, 2011 "Final Appeal Decision" signed by DOC Chief Grievance Officer (Varner) indicating that his final grievance appeal was denied. (*Id.* and Doc. 20).

As relief, Plaintiff requests declaratory relief as well as compensatory, nominal and punitive damages. (*Id.*, p. 8). As stated, Plaintiff sues all Defendants in both their individual and official capacities.[7]

## VI. Discussion.

As stated, the Court indicated that it now appears Plaintiff has exhausted his DOC administrative remedies. (Doc. 23). Also, as noted, we will recommend that Plaintiff's claims for monetary damages against all Defendants in their official capacities be dismissed. *See Meekins,*

---

[7]Plaintiff cannot seek compensatory damages from each named Defendant in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, both compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989); *Meekins v. Beard,* 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker,* 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff has sued all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities. Therefore, all of Plaintiff's claims for monetary damages against Defendants in their official capacities should be dismissed.

*supra.*

Plaintiff Jones basically alleges violations of his religious free exercise rights under the First and Fourteenth Amendments, due to his improper transfer from SCI-Frackville to a Virginia state prison where he was required to shave his beard despite his hair exemption granted by the PA DOC due to his Muslim religion.  Plaintiff states that "shaving of the beard is prohibited in Islam." (Doc. 10, p. 6).

We find that Plaintiff has stated a free exercise of religion claim against Defendants Lorady, Schueren, Dudeck, Clark and James since he alleges that they knew of his hair exemption and still allowed him to be transferred to Virginia.  We also find that Plaintiff has stated a claim against Defendants Superintendent Wenerowicz and Deputy Superintendent Kovalchik since he avers that they approved transferring him to Virginia despite knowing that he was a practicing Muslim, that shaving his beard was prohibited, and that he had a valid hair exemption.  (*See* Doc. 10, pp. 6-7). We find that Plaintiff has impermissibly named supervisory Defendant DOC Secretary Beard based on *respondeat superior*.  (*Id*.).  We also find that Plaintiff has mainly named Defendant Grievance Coordinator Damiter based on his response to Plaintiff's grievance, and that this is not sufficient to hold him liable with respect to Plaintiff's constitutional claim.  (*Id*., p. 5).

In *Thompson v. PA DOC*, 2007 WL 404056, *1-*2 (M.D. Pa. 2-1-07), the Court stated:

> The DOC has an inmate Hygiene and Grooming Policy, DC-ADM 807. The Policy provides, in pertinent part "Hair that does not fall below the top of the collar (afro styles no longer than four inches) shall be permitted[.] Section E of DC-ADM 807 sets forth the procedures that an inmate must follow in order to obtain an exemption to the grooming policy for legitimate religious purposes, and provides as follows:

1.      Exceptions to the provisions of this directive may be granted for legitimate religious reasons on a case by case basis. The following procedures are to be followed to request/obtain a religious exemption:

1. The inmate must provide a written request for a haircut exemption to the Facility Chaplaincy Program Director (F.C.P.D.)

2. The request must indicate the religious conviction upon which the exemption is based.

3. All inmates requesting a haircut exemption on the basis of religious conviction must supply something in writing confirming the inmate's participation in the particular religion[.]

4. The F.C.P.D., after speaking with the inmate, determines the validity of the request.

5. The F.C.P.D. shall notify the Superintendent or designee of the determination and recommendation[.]

6. The Superintendent's decision is sent to the F.C.P.D. who, in turn, notifies the appropriate staff and inmate[.]

7. In cases where the F.C.P.D. cannot make an appropriate determination, the Facility Chaplaincy Program Director must submit all written information to the Administration of Religion and Family Services for review and recommendation.

8. The exemption will be lifted if there is a change in the status of the inmate, e.g. converts to another religion which does not require an exemption to hair length.

DC-ADM 807-2-3.

The *Thompson* Court also stated:

> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. Amend. I. In *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.
>
> It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted). Constitutional rights, however, including the right to practice religion, may be reasonably restricted in order to facilitate valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. *See Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier,* 417 U.S. 817, 822-23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Accordingly, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822.
>
> The Court of Appeals for the Third Circuit has upheld the validity of the hair length regulations of DC-ADM 807. *See Wilson v. Schillinger,* 761 F.2d 921 (1985). *Cole v. Flick,* 758 F.2d 124 (3d Cir.), *cert. denied,* 474 U.S. 921, 106 S.Ct. 253, 88 L.Ed.2d 260 (1985), *Dreibelbis v. Marks,* 742 F.2d 792 (1984). The Court of Appeals Circuit found that the justifications for the policy, including, *inter alia,* (1) internal security, insofar as long hair could be used to conceal or transport contraband, including weapons or drugs, or by thwarting identification; (2) sanitation concerns, in that long hair increases the risk of lice and infection, particularly with respect to those inmates working in mail and food services; and (3) to prevent the possibility that institutional security would be jeopardized by selective enforcement of institutional directives, were all clearly legitimate in that they are directly related to prison security, and that DC-ADM 807 did not represent an exaggerated response to those concerns. *See Cole, supra.*

*Id.,* *2-*3.

Plaintiff Jones does not challenge the DOC hair length regulations and exemptions. Rather, he claims that he was improperly placed on the out of state transfer list, transferred to Virginia, and made to shave despite his DOC hair exemption and despite knowing that he was not an appropriate inmate for the list due to his exemption. Plaintiff states that he personally advised Defendants Lorady, Scheuren and Dudeck that his religion prohibited the shaving of his beard and that he had a valid hair exemption. Plaintiff avers that despite his hair exemption, Defendants Lorady, Scheuren and Dudeck made him shave his beard on April 28, 2010. Plaintiff alleges that Defendants Superintendent Wenerowicz and Deputy Superintendent Kovalchik approved transferring him to Virginia despite knowing that he was a practicing Muslim, that shaving his beard was prohibited, and that he had a valid hair exemption. Plaintiff further avers that Defendants Clark and James, intelligence officers, reviewed inmates on the transfer list for approval, and that these two Defendants approved his transfer to Virginia despite knowing that he was a practicing Muslim, that shaving his beard was prohibited, and that he had a valid hair exemption. Plaintiff states that soon after the April 28, 2010 incident in which he was made to shave, he was transferred to GRCC in Virginia, where he was forced to shave every day. Plaintiff alleges that he was transferred back to SCI-Frackville on July 19, 2010, after the Superintendent at GRCC advised him that Virginia just recently became aware he had an approved hair exemption.

1. *Supervisory Defendant DOC Secretly Beard*

Plaintiff does not sufficiently allege that supervisory Defendant DOC Secretary Beard improperly placed him on the out of state transfer list, and that Beard transferred him to a Virginia state prison where he was made to shave despite his DOC hair exemption. Plaintiff does not aver

that Defendant Beard personally knew that he was not an appropriate inmate for the transfer list due to his exemption.  (Doc. 10, p. 7)

We find that supervisory state official Beard is named as a Defendant based only on *respondeat superior*.  Plaintiff does not aver he personally approached Defendant Beard about his transfer and about being improperly placed on the out-of-state transfer list.  With respect to DOC Secretary Beard, Plaintiff merely names him as a Defendant based on his DOC supervisory position. We do not find sufficient allegations about the personal involvement of Defendant Beard in Plaintiff's Amended Complaint.  As mentioned, Plaintiff does not allege that Defendant Beard played any role in the decision to place him on the out of state transfer list or that Beard knew he had a hair exemption.

As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*.  It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *Id*.  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009)*; Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009)*,* repeated the personal involvement necessary in a § 1983 action.  In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009),

15

the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim to relief that is plausible on its
> face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S.
> Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,
> 570 (2007)).

> "Innis's allegation against Wilson also fail because Innis is attempting
> to establish liability based on supervisory liability. *See Rode v. Dellarciprete,*
> 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely
> on the operation of respondeat superior, as a defendant must have
> personal involvement in a civil rights action). Innis does not allege that
> Wilson had personal knowledge of his injury and subsequently acted with
> deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these
> claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has specifically stated the personal

involvement of Defendant DOC Secretary Beard with respect to his free exercise of religion claim.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims.
> *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868
> (2009) ("Government officials may not be held liable for unconstitutional
> conduct of their subordinates under a theory of *respondeat superior.*" );
> *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought
> under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* )
> (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather,
> each named defendant must be shown, via the complaint's allegations, to have
> been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S.
> at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each
> Government-official defendant, through the official's own individual actions,
> has violated the Constitution.") "Personal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the
> 'personal involvement' requirement, a [§ 1983] complaint need only
> allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326
> F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10); *Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

Therefore, we will recommend that Defendant DOC Secretary Beard be dismissed with prejudice.[8]  *See Morales v. Beard*, Civil No. 11-0692, M.D. Pa., 2011 WL 2938225 (M.D. Pa. 6-22-11), adopted by 2011 WL 2930985 (M.D. Pa. 7-19-11).

*2.  Defendant Grievance Coordinator Damiter*

Plaintiff avers that Defendant Grievance Coordinator Damiter rejected his original grievance regarding his transfer to Virginia as untimely, and that after it was remanded by the DOC Chief Grievance Officer for a response on its merits, Damiter denied his grievance.  (Doc. 10, p. 5). Thus, to the extent that Plaintiff is claiming Defendant Damiter violated his constitutional rights regarding his response to his grievance, we find that this Defendant should be dismissed.

A prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action.  The law is well-settled that there is no constitutional right to a grievance procedure.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-138 (1977).  This very Court has also recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir.

---

[8]Since Plaintiff was already given one opportunity to amend his Complaint, we do not recommend that he be given a second chance to amend his pleading regarding the two Defendants whom we recommend be dismissed.

June 8, 2005)(Non-Precedential).  Even if the prison provides for a grievance procedure, as the

DOC does, violations of those procedures do not amount to a civil rights cause of action.  *Mann*

*v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*,

886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v.*

*Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to

provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional]

claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's

grievances, no constitutional claim is stated.  *Burnside, supra.*

In light of the well-settled case law of this District, we find that Defendant Damiter is entitled

to dismissal with prejudice regarding Plaintiff's claim involving this Defendant's responses to his

grievance.

As discussed above, we find that Plaintiff Jones has alleged he had sincerely held religious

beliefs prohibiting the shaving of his beard, and that he has sufficiently stated the personal

involvement of Defendants Lorady, Scheuren, Dudeck, Clark, James, Superintendent Wenerowicz,

and Deputy Superintendent Kovalchik  with respect to his free exercise of religion claim under the

First Amendment and Fourteenth Amendment.[9]

---

[9]The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

**VII.  Recommendation.**

Based on the above, it is respectfully recommended that all of Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed.   It is also recommended that Plaintiff Jones's Amended Complaint **(Doc. 10)** be dismissed with prejudice as against Defendant Beard and Defendant Damiter.  Further, it is recommended that Plaintiff be allowed to proceed against Defendants Lorady, Scheuren, Dudeck, Clark, James, Superintendent Wenerowicz, and Deputy Superintendent Kovalchik  with respect to his free exercise of religion claim under the First Amendment and Fourteenth Amendment.

Finally, it is recommended that this case be remanded to the undersigned for further proceedings.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  October 21, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MATT JONES,                          :      CIVIL ACTION NO. **3:CV-11-0666**
                                     :
           Plaintiff                 :      (Judge Kosik)
                                     :
           v.                        :      (Magistrate Judge Blewitt)
                                     :
MAJOR LORADY, et al.,                :
                                     :
           Defendants                :


**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 21, 2011.**

       Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

       Any party may object to a magistrate judge's proposed findings,
       recommendations or report addressing a motion or matter described in
       28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
       disposition of a prisoner case or a habeas corpus petition within fourteen (14)
       days after being served with a copy thereof.  Such party shall file
       with the clerk of court, and serve on the magistrate judge and all
       parties, written objections which shall specifically identify the
       portions of the proposed findings, recommendations or report to which
       objection is made and the basis for such objections.  The briefing
       requirements set forth in Local Rule 72.2 shall apply.  A judge shall
       make a *de novo* determination of those portions of the report or
       specified proposed findings or recommendations to which objection
       is made and may accept, reject, or modify, in whole or in part, the findings
       or recommendations made by the magistrate judge.  The judge, however,
       need conduct a new hearing only in his or her discretion or where
       required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


_____    s/ Thomas M. Blewitt
                                     THOMAS M. BLEWITT
                                     United States Magistrate Judge


**Dated: October 21, 2011**